and Mr. Henderson. Case number 8. Thank you, Your Honor. May it please the Court. I want to start with an observation from the Salahuddin case about the nature of Rule 12, and that's that it serves an important social policy and not a narrow, finicky procedural requirement. It was clear from the beginning. I have to assure you, Mr. Henderson, that no member of this panel would ever call a procedural rule finicky. I don't dispute that. But what federal court was tell the district court, I think my rights were violated. I think that this evidence is the fruit of the poisonous tree and violate the Fourth Amendment. I want a hearing on this motion to suppress. Now, his lawyer disagreed with him. Of course, it was not a lawyer that he chose as an indigent defendant. But from the very beginning, he was asserting this claim. And so that makes that different from a lot of cases where maybe you only notice a Fourth Amendment violation on appeal. You notice that after trial, it's something for the purposes of delay. But, you know, here's the problem. I understand why you're making this argument, because it makes it seem less untimely when the motion finally does come in. But there are two rules, which at least in and of themselves, I'm sure you would have no quarrel with. One is that when somebody is represented, then that person needs to communicate with the court through counsel. And two, counsel have a responsibility to assess arguments and not make arguments that seem to be poorly based. And, you know, lawyers do that all the time, you know, you see it in criminal cases. And so if somebody wants to say, I want this alibi witness, or somebody wants a motion to suppress, or somebody wants whatever they want, you know, and a responsible lawyer is going to say, sometimes, you know, I really can't stand up there in front of the court and do that. Now, are they always right? Probably not. You know, maybe some of the time it would have gone somewhere. But if we start from the proposition that that's what these lawyers are doing, they're assessing all of the facts, and then there's actually a fairly long period, some months, where the last lawyer comes in before this motion gets filed. And even that might justify the judge's decision. Right. So I guess there are three responses I'd make to that discussion. The first is that recently, what the Supreme Court has been saying, at least, or affirming sort of what the law is, is when you have appointed counsel, certainly they're acting as your agent, but only to the extent that they are effectively representing you. When, once you get into the realm of ineffective representation, the Supreme Court has excused things like procedural defaults for people who are represented by ineffective counsel. The second thing is, we have a lawyer who does think that this is a colorable claim, the second lawyer. Now there is, obviously, a period of delay, right. So opinions are different. The third thing is that what we're dealing with is sort of, maybe this is a best practices argument that doesn't get around the rule, but in the end, what this is going to come down to is, do we hear this motion in a timely manner, when an attorney says this is a non-frivolous motion, before trial, so that we don't have to redo a trial if there is an error discovered at the end, at a time that's close to the event, so the events are still fresh, or do we say, this is untimely, I understand this is a meritorious motion, perhaps, but it's just too late, we go through a trial, we go through an appeal, and then it's a 2255 question, because ultimately it's going to be, was that lawyer ineffective for just not seeing it. So the other thing that, I mean, this is just sort of a legal question here and a factual question, so they get this tip that some kids are in this area near an abandoned house. They go there, they see an adult man, and there's this exchange, he says, I'm taking pictures of the kids. Eventually, there's a credibility finding. Eventually, the court finds that, in fact, the officer does receive Suggs' permission to look at the photos on his camera. Don't we need to approach this record on that basis? Because, of course, the game's up as soon as that happens. He sees pictures that are troublesome enough that he certainly can go forward. Maybe. I wouldn't concede that last point, but what I would say is there are differences between the sworn testimony at trial and what you'd get in an evidentiary hearing on a motion to suppress. But as we look at this, how can we regard this issue about whether he got permission, whether the officer got permission to review the phone as unresolved? Well, because Mr. Suggs never had the opportunity to testify as to his version of the events. Because at trial, whether this was an illegal arrest really makes no difference. If he testifies, no, I didn't give consent, that doesn't make a difference for the jury's determination. And then he waives his right against self-incrimination. Whereas, at an evidentiary hearing, it wouldn't be that ultimate issue in front of the jury. He wouldn't have to waive his right to stay silent at the jury trial. He could testify and say, no, this is actually what happened, and then the district court would be able to make that credibility determination. So I'm positive. I mean, you can remind me where it is, but I'm certain that the district court does make the decision that Suggs says it's okay to look at the camera. The court credits that testimony at trial. Yeah, the court credits that testimony. No, that's correct. So in other words, the testimony comes in, you're just saying, well, Mr. Suggs chose not to testify. But it's still a finding, isn't it? It's a finding, but it's a finding in the absence of evidence. Well, so are all the rest of the findings. It's the finding of guilt, for that matter. You know, Mr. Suggs doesn't testify for that either. Right, but it's a finding based on one side, because only one side presented the evidence. Because there are other incentives that Mr. Suggs chose not to present evidence at the trial. Well, I mean, and I'm just saying that's the nature of the trial, and we rely on the outcome of a trial, even though it's only one side, so to speak. Right, but our contention isn't about the trial. It's that we should have had a hearing before the trial so that the judge could have made credibility determinations based on both sides, rather than what the government presented at the trial. But if there are no further questions, I'll save the time for rebuttal. Okay, that would be fine. Thank you. Ms. Scott. May it please the Court. Your Honor, the question here is whether or not there was good cause shown for the, whether the district court is striking the defendant's motion as untimely. The government's position is that it was not good cause shown. Mr. Godena was appointed in February of 2015, and he filed a motion to continue within about two weeks after being appointed. At that point, however, he never asked the district court for permission, for leave to reopen the time for filing pretrial motions. So do you think, had he simultaneously with that motion to continue, signaled to the court that he was at least asking permission to review the pretrial motions, that we'd have a different situation? Your Honor, I think so, because he was a new attorney coming in. I think the district court would have considered the fact that he was a new attorney, and he could have, as Your Honor pointed out earlier, a different view than what Mr. Gable and Mr. Kavanaugh had, which was that this motion to suppress had no merit or was frivolous. So eventually, it's how many months after Mr. Godena comes in the case? Five months, Your Honor. Five months after he comes in that he files his motion for leave. And Your Honor, he doesn't attempt to say why it was not filed earlier. He simply says, counsel believes the motion to be meritorious and in the interest of justice. That's not good cause shown for why it was not filed earlier, or why Mr. Godena never in response to his motion for leave to file, he never offers any kind of excuse as to why he didn't file any kind of request to open the filing of pretrial motions earlier. Now, is it the government's position, putting this timeliness business to one side, that at the time the officers drive up to this park and they see Suggs and the two boys, the officer initiates a conversation with Suggs. We've said you get to talk to people. Suggs says he's taking pictures of kids in different settings for his photography business. At that moment, do you think that the officer could have restrained Mr. Suggs? Yeah, Your Honor, I believe that the probable cause for the arrest did not take place until he looked at the pictures. Until he looks at, so you have to get him, I think that's probably right. You have to get him into the camera somehow. The pictures are certainly easily troublesome enough to support that. Yes, Your Honor, and that would be the government's position, that at the time that he looked at the pictures and saw the content of the pictures, at that point he did have cause to, probable cause to arrest him for disorderly conduct. Mm-hm. Is there no other questions? Thank you. I see none. Thank you. Anything further, Mr. Henderson? Your Honor, I do just want to push back a little bit on the pictures. These were non-nude pictures. I just want to make sure that the court is clear on that. No, I understand, but they're pictures of kids with their pants pulled down, but their boxers are still on, but it's still a little, more than a little sketch, I would say. But I don't know if that gives the officers probable cause for disorderly conduct or for production or possession of child pornography. I'm not sure. Well, it doesn't matter what the crime is initially. I mean, if it's disorderly conduct or there's bound to be state offenses. Right, but that's what I'm saying. I'm not sure what the probable cause is of, what offense that is. It may be troubling, you know, and we may have some questions about this that warrant further investigation. When did the boys indicate that they got paid? That was when they initially talked with the officers. Right, because that would be very troubling to me, too, if I saw a man who was not related to a couple of boys. I'm a police officer. I see a man, and they say he paid us 20 bucks to take our pictures. Right. I'm still not sure what the probable cause is of, though. I think there's certainly, there's reasonable suspicion once you've seen the camera, once you've talked to the boys. Warrant's a follow-up, you know, a la Terry. Would you agree you could detain them for a bit while, you could detain Mr. Suggs for a bit to look into it further? I think so, but I think if you want to get to the level of search and seizure, you need probable cause, and I don't think this gets there. Okay. Thank you very much. All right. Thank you. Thanks to both counsel. We'll take the case under advisement.